U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2015 JAN -5 PM 4: 18

CLERK

BY_____
DEPUTY CLERK

UNITED STATES OF AMERICA )
)
v. ) Case No. 5:13-cr-34
)
KAREN BRISSON )

## OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Docs. 17 & 29)

This matter came before the court for a review of the Magistrate Judge's November 25, 2014 Report and Recommendation ("R & R"). Defendant Karen Brisson has filed a motion pursuant to 28 U.S.C. § 2255 that seeks to vacate, set aside, or correct a judgment and sentence imposed by this court on the grounds that the 24 month sentence she received was based upon factual errors which were not challenged by her attorney because she received ineffective assistance of counsel. (Doc. 17.) The government opposed the motion. (Doc. 19.)

Ms. Brisson has filed a timely objection to the R & R (Doc. 30), contending that "[t]he Magistrate[']s report is contrary to law and did not allow proper fact-finding procedures, and there are conclusions that are erroneous." (Doc. 30 at 2.) She seeks a hearing so that she may contest certain information set forth in the Presentence Report ("PSR") which the court relied upon in sentencing her, to correct certain alleged misstatements made by her defense counsel, and to establish that she received constitutionally deficient advice regarding her appellate rights.

A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); *accord*

*Cullen*, 194 F.3d at 405. A district judge, however, is not required to review the factual or legal conclusions of the magistrate judge as to those portions of a report and recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

Ms. Brisson's objection to the R & R focusses on the same issues she raised in her § 2255 petition: factual errors at sentencing allegedly caused by her counsel's ineffective assistance and her counsel's deficient advice regarding a direct appeal. In his thirty-page R & R, the Magistrate Judge carefully reviewed the factual record and evaluated Ms. Brisson's claims and concluded that no hearing was necessary because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The court reviews this conclusion *de novo*.

Ms. Brisson contends that the court relied upon factual errors in sentencing her based upon an erroneous chronology of events set forth in the PSR. At Ms. Brisson's change of plea hearing, the court explained how the PSR would be used by the court at sentencing, explained that there would be an opportunity to challenge the facts in the report and the guidelines applications and a process by which the probation officer would attempt to resolve those disputes with the parties. The court explained that if there were contested facts at sentencing, the court would hold a trial of the facts, typically with witnesses testifying but sometimes with the attorneys simply making arguments. The court advised Ms. Brisson that it would resolve the factual disputes and advise the parties of the court's ruling. The court explained that it would follow this same procedure with regard to any guideline challenges. Ms. Brisson expressed no confusion or concern with this process.

Thereafter, the parties engaged in negotiations to resolve a factual dispute regarding the Town of Weybridge's loss as a result of Ms. Brisson's embezzlement. The government initially took the position that the total loss was in excess of $450,000. Ms. Brisson's counsel was able to persuade the government to stipulate to a loss of $400,000 which resulted in a lower guideline even though the parties agreed that the amount of restitution owed by Ms. Brisson was $431,812.06. This resolution process resulted in a

2

guideline range of 24 to 30 months as opposed to 30 to 37 months which would have resulted from a loss in excess of $400,000. The final draft of the PSR reflects the parties' stipulation to a $400,000 loss.

In his R & R, the Magistrate Judge accurately observes that Ms. Brisson, through her counsel, filed a sentencing memorandum that indicated that Ms. Brisson had "no factual or legal objection to the PSR[.]" (Doc. 21-1 at 1.) Ms. Brisson does not challenge her counsel's representation that he reviewed both the draft and final PSR with her prior to sentencing and that her response to his sentencing memorandum was "thank you you did a great job and it is very obvious you put alot of time and thought into helping me. [I] truly appreciate it." (Doc. 25-4 at 1.) At the time, Ms. Brisson was not incarcerated and presumably had access to the information that she now asserts would demonstrate that the PSR's chronology of events was inaccurate.

At sentencing, the court asked Ms. Brisson whether she had reviewed the PSR and she advised that she had. In response to the court's question, she specifically advised that there were no factual errors in the PSR. Her counsel agreed with this statement as did the government's attorney. No party objected when the court adopted the PSR as its findings of fact. Ms. Brisson was present when both her counsel and the government's attorney advised the court that there would be no witnesses.

In her statement to the court, Ms. Brisson did not indicate any errors in the PSR or in her counsel's representations to the court. She remained coherent, did not request to take a break, and she did not disclose any severe duress that prevented her from understanding the proceedings or the court's questions.

In her § 2255 petition, Ms. Brisson contends that she can now prove that the PSR contained factual errors, that her counsel misrepresented the facts, and that the court relied on these factual errors in sentencing. She does not, however, provide any reasonable explanation for her silence about these matters at sentencing. She does not claim she was deprived of an opportunity to challenge the facts at sentencing and she also does not make a claim of actual innocence. She does not even claim that her counsel persuaded her to forego a challenge of the facts as a litigation strategy. Although she

claims that she was under considerable stress, she does not claim she was incompetent or otherwise incapable of assisting in her own defense.

If an evidentiary hearing is held with regard to her § 2255 petition, Ms. Brisson claims that she will be able to establish that her last act of embezzlement on September 4, 2012 occurred before the Town of Weybridge received a specific complaint that she had taken between $8,000 and $9,000 from the Town and that she first learned of the theft complaint on September 7 and prior to that she did not have "any indication at all of theft." (Doc. 17-3 at 1-2.) She further claims that she can establish that the PSR incorrectly states that, in August of 2012, the Town's selectboard discussed a recommendation from the Vermont League of Cities and Towns ("VLCT") that it conduct an external audit of its financial records (with Ms. Brisson in attendance and taking notes) when she can prove the discussion actually took place in September or October. She believes these facts are critical to the court's sentence because the court noted that her last act of embezzlement occurred "after all of this stuff had gotten moving" and noted that it was "incredible" she was cutting a check to herself on September 4, 2012, when "it's clear that an audit is coming." (Tr. 6, 22.)

Accepting Ms. Brisson's version of the facts as true, according to Ms. Brisson, as early as March of 2012 (the PSR states the meeting took place in May 2012) the Town's selectboard had begun discussing an audit. Prior to March at least one selectboard member had contemplated an audit of the Town's accounts in response to a rash of embezzlements reported in the press. The court specifically asked whether Ms. Brisson came forward on her own to disclose her embezzlement in response to media coverage of similar crimes (as the court initially mistakenly believed) or whether the PSR was correct that Ms. Brisson's disclosure of her embezzlement occurred only after an external audit was underway. Ms. Brisson's counsel accurately and appropriately advised the court that Ms. Brisson's disclosure was made only after an external audit was ordered.

The court did not find that Ms. Brisson had been accused of theft prior to her last act of embezzlement. Ms. Brisson is simply mistaken on this point. However, it would been somewhat remarkable for Ms. Brisson to claim at sentencing (as she does now) that,

4

on September 4th, she lacked "any indication at all of the theft" when she had been embezzling from the Town for years. Had she made this claim at sentencing, her credit for acceptance of responsibility may have been jeopardized.

Accordingly, even with the "corrected" facts, the court would not alter its conclusion that Ms. Brisson's last act of embezzlement occurred when municipalities throughout Vermont were discovering employee embezzlements which the court perhaps inartfully referred to as when "all this stuff had gotten moving" and when it was clear that an audit would be forthcoming. Her counsel's acknowledgement of this fact was both accurate and non-prejudicial.

Ms. Brisson seeks to further establish that the court erred in observing that she was in "resistance mode" after it was clear that her embezzlement would be discovered. If granted an opportunity for an evidentiary hearing, Ms. Brisson intends to establish that she was trying to assist the Town through the November election cycle and that it was very difficult for her to do so because she was under considerable stress. She contends that if this evidence was fully presented, her late disclosure of her embezzlement could be viewed as in furtherance of the Town's best interests. Ms. Brisson's counsel made this argument at sentencing and the court found it unpersuasive. In its victim impact statement, the Town also appeared unpersuaded that Ms. Brisson's late disclosure and participation in the audit was advantageous to the Town's interests.

The court's observation that during this time period Ms. Brisson remained in "resistance mode" was not clearly erroneous. In September of 2012, when confronted with a specific allegation of theft, Ms. Brisson claimed to be shocked. Rather than admit her guilt, she expressed anger and interest in finding out who had made the allegation. When she was assured of the selectboard's support, she did not disclose the fact that she had committed a much greater theft than the $8,000 to $9,000 alleged. Instead, she represented that she would cooperate with the audit and then waited over two months to disclose her embezzlement. During this time period, there were numerous opportunities for Ms. Brisson to advise the Town of her crime, save the Town time, effort, and expense, and let the Town decide for itself whether it needed her assistance through the

election cycle. The court was not required to accept at face value Ms. Brisson counsel's explanation that she delayed disclosure of her embezzlement in furtherance of the Town's best interests. Her counsel's performance was thus not constitutionally deficient in failing to present this unpersuasive argument more vigorously.

Finally, if permitted an evidentiary hearing, Ms. Brisson would emphasize her efforts to pay restitution to the Town by trying to sell her home on which she had expended substantial labor and attention. Through the PSR and Ms. Brisson's counsel, the court was aware at sentencing that Ms. Brisson had provided the Town with a mortgage on her house and was attempting to sell it. It nonetheless remained accurate that no restitution had been paid although sentencing took place eight months after Ms. Brisson's November 2012 disclosure of her embezzlement. During this time period, Ms. Brisson remained in the community and was free to engage in employment and make modest restitution payments.

When specifically asked by the court whether Ms. Brisson had made any payments towards restitution, Ms. Brisson's counsel properly and accurately represented that restitution had not been paid. Ms. Brisson appears to argue that her counsel should have been more forceful in describing her efforts to pay restitution and the sacrifice she was willing to make in selling her home. Although on occasion the court has granted variances from the Sentencing Guidelines based upon full or substantial payment of restitution, it has never granted a variance merely because a defendant unsuccessfully *attempted* to pay restitution. The court was nonetheless mindful of the many positive contributions Ms. Brisson has made in her life which her counsel emphasized in both his sentencing memorandum and at sentencing. Finding these arguments persuasive, the court noted that although the facts supported a middle of the guidelines range sentence, because of Ms. Brisson's lack of criminal history and positive characteristics and contributions, a sentence at the very bottom of the Sentencing Guidelines was

appropriate. The court concluded that any lesser sentence would not fully reflect the seriousness of the crime and Ms. Brisson's abuse of the Town's trust.[1]

Based on the foregoing, the court agrees with the Magistrate Judge's conclusion that an evidentiary hearing is not required because even if Ms. Brisson's version of the events were fully presented and fully credited, it would not alter the court's conclusion that a 24 month sentence for an offense which spanned approximately six years and involved the embezzlement of no less than $400,000 from a small rural town that entrusted its finances and its limited resources to Ms. Brisson's care was sufficient but not greater than necessary under 18 U.S.C. § 3553(a).

Ms. Brisson makes a separate argument with regard to her decision to forego a direct appeal. She contends that her counsel discouraged her from filing an appeal because an appeal "would be expensive and that the B.O.P. frowned on it so his advice would be to let it go and not appeal" and she claims her attorneys also failed to advise her of the right to be represented by an attorney regardless of her ability to pay. (Doc. 23 at 2-3.) Ms. Brisson does not claim that after receiving her lawyer's advice, she directed him to file an appeal and he failed to do so. Instead, she claims that she "[f]ailed to file

---

[1] Ms. Brisson's letter asking for home confinement and/or a halfway house under the Second Chance Act was not received by the court. A federal court may reconsider a sentence in only limited circumstances not applicable here. The Second Chance Act does not apply to the court but is, instead, administered by the Bureau of Prisons:

> The Second Chance Act increases the possible length of pre-release halfway house placement from 6 to 12 months, and requires the BOP to make an individualized determination that ensures that the placement be "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6)(C). "[I]n making an individualized determination, the BOP must consider: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statements by the court that imposed the sentence concerning the purpose of the sentence or recommending a particular setting where the sentence should be served; and (5) any pertinent Sentencing Commission Policy Statements. See 28 C.F.R. § 570.22 (citing 18 U.S.C. § 3621(b))."

*Porter-Bey v. Bledsoe*, 456 F.App'x 109 (3d Cir. 2012)

appeal due to poor[ ]advice even though I reasonably demonstrated that I wanted to[.]" (Doc. 23 at 3.)

In her objection to the R & R, Ms. Brisson claims that she should be permitted to produce emails and correspondence to her attorneys but that she cannot do so while she is incarcerated. She further argues that the Magistrate Judge should have credited her statement that the allegedly improper advice regarding an appeal was made either by her attorney *or his partner*. She claims she is entitled to a hearing at which a credibility determination may be made.

Ms. Brisson's counsel has submitted an affidavit, stating "[i]t is absolutely false" he failed to file an appeal despite Ms. Brisson's request. (Doc. 25 at 3.) He avers he specifically advised Ms. Brisson of her right to appeal and that he provided her accurate advice that "it had effectively no chance of being successful." (Doc. 25 at 3.) He also denies that he advised Ms. Brisson that an appeal would be expensive. Although he does not recall any statement regarding the Bureau of Prisons, he doubts he would have stated that the Bureau of Prisons "frowned on appeals" because the statement is not true.

At the conclusion of its sentencing, the court advised Ms. Brisson of her right to appeal and to file the appeal in forma pauperis in which event the cost of the appeal would be waived. It also advised her that, if requested, the clerk's office would file the notice of appeal for her and would appoint counsel on her behalf. The court advised her of the deadline for filing an appeal as well.

Ms. Brisson was permitted to self-surrender and thus had ample time in a non-incarcerative setting to consider whether she wanted to file a direct appeal. Accordingly, with regard to whether Ms. Brisson was advised of her right to appeal, her right to appointed counsel, and the ability to obtain a waiver of the costs of an appeal, the record conclusively establishes that Ms. Brisson was advised of these rights. The only issue that remains is whether her attorneys provided her with constitutionally deficient advice regarding the potential success, cost, and adverse consequences of a direct appeal.

With regard to her attorney's advice regarding the potential success of an appeal, Ms. Brisson has failed to establish that a "corrected" version of the facts would have

8

mandated a lower sentence and that "[t]he likelihood of a different result [was] substantial, not just conceivable." *Harrington v. Richter*, 131 S. Ct. 770, 792 (2011). Ms. Brisson therefore did not receive constitutionally deficient advice when she was advised that a direct appeal was unlikely to prove successful.

The Magistrate Judge further found "it is highly improbable that experienced federal criminal practitioners such as attorneys McLaughlin and Langrock would advise a client that the Bureau of Prisons 'frowned on' direct appeals" (Doc. 29 at 23) and thus even though he fully credited Ms. Brisson's allegation that the Bureau of Prisons statements may be attributed to Attorney McLauglin's partner, he nonetheless found Ms. Brisson's assertions "not only improbable but fanciful." (Doc. 29 at 23.) The court agrees. It is highly unlikely that Ms. Brisson received advice that the Bureau of Prisons "frowned upon appeals" because the Bureau of Prisons is neither advised of an appeal, consulted regarding its merits, nor permitted to take a position with regard to it. The court also agrees it is highly improbable that Ms. Brisson's attorneys advised her that an appeal would be "expensive" when her attorneys knew that if she could not afford an attorney, she would be entitled to court appointed counsel selected from a panel on which they both serve as approved attorneys. An evidentiary hearing would allow Ms. Brisson to reiterate her claims, but it would not render them more persuasive, especially when the court, itself, provided Ms. Brisson with an accurate statement of her appellate rights.

In summary, the Magistrate Judge correctly concluded that Ms. Brisson has not satisfied her burden under *Strickland v. Washington*, 466 U.S. 668 (1984) to demonstrate that her counsel's investigation of the case, his preparation for and representation at sentencing, and his advice regarding an appeal was deficient and prejudiced her defense.

Ms. Brisson has also not established that she is entitled to relief based upon the court's alleged errors at sentencing. A "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Graziano v. United States*, 83 F.3d 587, 589-90 (2d Cir. 1996) (per curiam) (quoting

*United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)); *see also United States v. Springs*, 988 F.2d 746, 747 (7th Cir. 1993) ("A Sentence within the Guidelines . . . cannot be a complete miscarriage of justice.") (quoted in *Werber v. United States*, 149 F.3d 172, 177 n. 4 (2d Cir. 1998)).

## CONCLUSION

For the foregoing reasons, the court hereby ADOPTS the Magistrate Judge's R & R (Doc. 29), and, accordingly, the court DENIES the Defendant's motion to vacate, and DISMISSES WITHOUT PREJUDICE Defendant's § 2255 motion (Doc. 17). SO ORDERED.

Dated at Burlington, in the District of Vermont, this 5th day of January, 2015

Christina Reiss, Chief Judge
United States District Court